***********
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement dated 24 August 2001 as:
 STIPULATIONS
1. An employment relationship between plaintiff and defendant-employer existed on the date of the injury giving rise to this claim.
2. At all relevant times herein, AIG Claim Services was the carrier on the risk for workers' compensation purposes.
3. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, with defendant-employer employing the requisite number of employees.
4. Plaintiff's applicable average weekly wage was $142.66. This yields a compensation rate of $95.12.
5. The alleged date of injury was 4 October 1995. Defendants admitted this claim was compensable but failed to memorialize this admittance on a Form 21, 60, or 63.
6. Plaintiff has not received indemnity compensation (i.e., temporary total disability benefits) since 1 February 1996. Defendants filed a Form 61 on or about 11 June 1998 denying plaintiff's claim for additional benefits.
7. Plaintiff has been treated by Dr. Heter of Smithfield Urgent Care; Dr. Michael D. Gwinn of Triangle Spine and Back Care Center; William P. Sorrels, Jr., L.P.T., of Goldsboro Physical Therapy and Rehabilitation; Dr. Tom S. Rand of Wilson Orthopaedic Surgery and Neurology Center, P.A.; Karen Bell, L.P.T., of Physical Therapy Services of Johnston County, Inc.; and Dr. William Lestini of Triangle Spine and Back Care Center.
8. The Full Commission incorporates by reference in this matter the contradictory, inconsistent orders of Deputy Commissioners Bost and Hoag filed on 19 September 1999, as well as defendants' May 2001 Motion to Dismiss with prejudice and plaintiff's response thereto. At the hearing before the Deputy Commissioner, the parties stipulated into evidence in this case a packet of medical records marked collectively as Stipulated Exhibit 1. In addition, defendants introduced and the Deputy Commissioner admitted defendants' Exhibit 1 which consists of plaintiff's answers to interrogatories.
 ***********
Based upon the greater weight of the competent and credible evidence of record in this matter, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was 50 years old. Plaintiff graduated from high school and has also been certified as an insurance agent. Plaintiff was not working in any capacity as of the date of the hearing before the Deputy Commissioner.
2. On 4 October 1995, plaintiff was working as a cashier for defendant-employer. On that day, plaintiff sustained an admittedly compensable injury by accident when a chair on which she sat collapsed.
3. After her admittedly compensable injury by accident, plaintiff received medical treatment from a number of different health care providers, beginning with Dr. Heter at Smithfield Urgent Care. Plaintiff reported an immediate onset of low back pain and left hip pain after the chair collapsed. After a couple of days, plaintiff began to complain of pain radiating down to her left buttock and pain in her left ankle. One week after the injury by accident, plaintiff began to complain of pain and stiffness at the top of her left shoulder and in the scapular area. Later, plaintiff's complaints to Dr. Heter included left thigh pain.
4. Dr. Heter referred plaintiff for physical therapy, which she underwent at Physical Therapy Services of Johnston County. Dr. Heter noted that due to plaintiff's persistent symptoms and pain and only marginal improvement after three weeks of usual conservative modalities, and an anticipated prolonged period of disability and possible malingering, plaintiff should be referred to an orthopaedist for further evaluation and treatment. Dr. Heter accordingly referred plaintiff to Dr. Tom S. Rand at Wilson Orthopaedic Surgery and Neurology Center.
5. Dr. Rand treated plaintiff for a few months; however, after several diagnostic tests failed to reveal significant orthopaedic injuries other than sprains, Dr. Rand referred plaintiff for a second opinion evaluation with Dr. Michael D. Gwinn. Dr. Rand, finding no objective orthopaedic problems, felt that plaintiff was capable of returning to work by 21 December 1995, and had indicated by 20 November 1995, that he did not believe that any further treatment "would be worth doing."
6. Plaintiff was referred for a second opinion by Dr. Gwinn of Triangle Spine and Back Care Center. Dr. Gwinn referred plaintiff for another course of physical therapy in January 1996 at Goldsboro Physical Therapy and Rehabilitation. Plaintiff did not obtain any appreciable improvement as a result of the latter course of physical therapy, and plaintiff received no significant medical treatment after 1996. However, the physicians and therapists who treated plaintiff had been unable to detect or diagnose physical problems apart from sprains.
7. Defendants filed a Form 28B on or about 14 July 1997, indicating that the last indemnity compensation was paid to plaintiff on 1 February 1996, and the last medical compensation was paid on 23 June 1997.
8. On 13 May 1998, plaintiff filed a Form 18M dated 20 April 1998 seeking additional medical compensation. Plaintiff did not have a physician sign the Form 18M; however, the face of the Form 18M itself indicates that a physician statement is optional.
9. This matter was initially set to be heard before former Deputy Commissioner Hoag on 19 October 1999. Prior to that date, on 25 August 1999, defendants filed a Motion to Dismiss plaintiff's claim on the basis that plaintiff had allegedly failed to comply with a 23 July 1999 Commission order compelling her to respond to defendants' discovery.
10. The parties then agreed that the Motion to Dismiss should be held in abeyance by the Deputy Commissioner; however, before the parties could communicate this agreement to the Commission, the parties received contradictory orders on defendants' motion by former Deputy Commissioners Hoag and William Bost. On 28 October 1999, counsel for defendants wrote Deputy Commissioner Hoag that plaintiff had complied with the discovery requests and that defendants did not object to the matter beingcontinued from the hearing docket, with the implication being that defendants were no longer seeking to have the case dismissed without prejudice.
11. Defendants agreed to send plaintiff for a second opinion evaluation by Dr. Lestini at Triangle Spine and Back Center. Plaintiff was evaluated by Dr. Lestini on 2 March 2000. She reported to Dr. Lestini with pain in her low back on the left side into the left buttock, numbness in the right medial thigh and the right anteromedial calf over into the dorsum of the right big toe. Plaintiff also reported continuing mild to moderate neck pain and mild swelling in the left ankle. Dr. Lestini diagnosed plaintiff with a cervical strain and lumbar strain with probable degenerative disc disease, myofascial pain, probable fibromyalgia with multiple soft tissue tender points and a history of sleep disturbance, and left ankle pain of unknown etiology. Dr. Lestini ordered an MRI of the LS spine and planned a return visit by plaintiff when the tests were completed.
12. Plaintiff returned to Dr. Lestini on 30 March 2000. She continued to complain of low back and left buttock pain and right lower extremity numbness, and an examination revealed that her condition was unchanged. Plaintiff's MRI revealed possibly symptomatic degenerative changes in plaintiff's low back and cervical spine and Dr. Lestini noted a suggestion of a left sided lateral bulge causing some mild narrowing in the foramen of the left L4 area. Dr. Lestini also reviewed a previously obtained MRI of plaintiff's cervical spine which suggested mild degenerative changes at C4-5 and C5-6, but no sign of herniation or cord compression or stenosis. Dr. Lestini's impression was that plaintiff has findings of cervical and lumbar degenerative changes which could be symptomatic, but it was unclear whether the changes were the source of plaintiff's pain. He did not recommend that plaintiff undergo a discography (further diagnostic testing), nor did Dr. Lestini recommend that plaintiff ultimately undergo surgery. He left the decision regarding any further diagnostic testing or surgery with plaintiff, whom he noted was uncertain of how to proceed. He opined that if plaintiff did not elect further testing or surgery, then she was at maximum medical improvement, and would be releasable to return to work at regular duties with a 3% permanent partial impairment rating.
13. Due to the failure of Dr. Lestini to specifically order further work-up for plaintiff but leaving it up to her, defendants denied payment for any further treatment.
14. Defendants filed a second Motion to Dismiss, this time with prejudice, on or about 4 May 2001 on the grounds that plaintiff had filed her renewed request for hearing more than one year following Deputy Commissioner Hoag's order to dismiss plaintiff's claim without prejudice. The Executive Secretary referred this motion on to be heard by a Deputy Commissioner in a formal, evidentiary hearing.
15. After plaintiff last received medical treatment following her injury by accident, she suffered two mini-strokes for which she received medical treatment. Plaintiff also testified that she has suffered from seizures, although the medical records are unclear with respect to the nature and cause of these seizures. Plaintiff also has received treatment for major depression.
16. No finding is made herein with respect to plaintiff's treatment for depression, as there is insufficient evidence of record from which the Full Commission can make a finding with respect to its causation.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Defendants waived their right to rely on Deputy Commissioner Hoag's order dismissing plaintiff's claim without prejudice by and through the letter dated 28 October 1999 indicating that the parties had agreed that the motion should be held in abeyance and that since that time plaintiff had complied with defendants' discovery requests. Furthermore, two separate Deputy Commissioners inexplicably entered conflicting and contradictory orders on defendants' motion on the exact same day; in essence, then, these orders cancelled each other out, particularly given the information imparted by defendants in the 28 October 1999 letter to the Commission. Accordingly, plaintiff at no time was in violation of Industrial Commission Rule 605, and based upon the factors stated herein, defendants have not raised good grounds to justify a dismissal of plaintiff's claim with prejudice.
2. Plaintiff sustained an admittedly compensable injury by accident on 4 October 1995. N.C. Gen. Stat. § 97-2(6).
3. As a result of her compensable injury by accident, plaintiff sustained injuries to her ankle, hip, low back, neck, and shoulder. Plaintiff was totally disabled for several months following her compensable injury by accident. N.C. Gen. Stat. § 97-29.
4. As a result of her compensable injuries sustained in the injury by accident, plaintiff received appropriate medical treatment that was reasonably necessary to effect a cure, give relief, or lessen the period of her disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
5. Based upon a complete review of the medical evidence presented, plaintiff is entitled to further medical treatment in the form of diagnostic testing pursuant to the opinion of Dr. Lestini. Should further testing lead to the need for surgery which is causally related to her compensable injury, plaintiff is entitled to undergo such surgery at defendants' expense. N.C. Gen. Stat. § 97-25.
6. Plaintiff is allowed to chose her own treating physician for further diagnostic testing and subsequent treatment. N.C. Gen. Stat. § 97-25.
7. Any further disability plaintiff may suffer as a result of her compensable injury by accident should be reserved for future hearing based upon the results of future diagnostic testing and resulting treatment, if any.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants' Motion to Dismiss plaintiff's claim with prejudice on the grounds that plaintiff filed a request for hearing more than one year after Deputy Commissioner Hoag's 29 September 1999 order dismissing plaintiff's claim without prejudice is denied.
2. Plaintiff may report to a treating physician of her choosing at defendants' expense for further diagnostic testing and treatment if prescribed and causally related to her admittedly compensable injury by accident sustained in October 1995.
3. Defendants shall pay the coasts of this action.
4. The issue of any further disability plaintiff may suffer is reserved for future hearing upon request by the parties.
This the ___ day of April, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER